UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSTIN J. JAMES-WETHERHULT,

    *Plaintiff*,

*v.*                             CASE NO. 13-CV-11992

COMMISSIONER OF                DISTRICT JUDGE PATRICK J. DUGGAN
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 10.)

Plaintiff Dustin James-Wetherhult was 25 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 22, 25.) Plaintiff's work history includes employment as a cook for four months and as a store clerk for four months. (Tr. at 124.) Plaintiff filed the instant claim on December 13, 2010, alleging that he became unable to work on November 1, 2010. (Tr. at 103.) The claim was denied at the initial administrative stages. (Tr. at 45.) In denying Plaintiff's claims, the Commissioner considered other and unspecified arthropathies as possible bases for disability. (*Id.*) On January 5, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Andrew G. Sloss, who considered the application for benefits *de novo*. (Tr. at 8-35.) In a decision dated January 19, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 18.) On March 20, 2012, Plaintiff requested a review of this decision. (Tr. at 6-7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 26, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On May 4, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party");

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of*

*Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*,

74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including

the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the

Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II

benefits are available to qualifying wage earners who become disabled prior to the expiration of

their insured status; Title XVI benefits are available to poverty stricken adults and children who

become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two

programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in death
> or which has lasted or can be expected to last for a continuous period of not less than
> 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity,
> benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of
> impairments that "significantly limits . . . physical or mental ability to do basic work
> activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. § 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 6, 2010, the application onset date. (Tr. at 13.) At step two, the ALJ found that Plaintiff's osteochondromatosis was "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one

of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. at 17.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 24 years old, which put him in the "younger individual age 18 - 49" category. *See* 20 C.F.R. §§ 404.1563, 416.963. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 14-17.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 17-18.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated at Hurley Medical Center's McLaren Family Practice and Family Orthopedic Associates for his osteochondromas. (Tr. at 166-209.)

On September 1, 2010, Eugene Tan, M.D., and Ronald Hunt, M.D., indicated that they "advised the patient that even though he has signed the pain contract for chronic pain, we cannot start him on methadone at this time because his last urine drug screen was positive for various substances such as marijuana and cocaine." (Tr. at 178.)

On September 17, 2010, Plaintiff was examined by Susan Mosier-LaClair, M.D. (Tr. at 188-89.) Plaintiff reported that he had the "bony lumps" "his whole life," that "anything pressing on the lumps or bumps makes it hurt" and that "his feet and ankles just ache with prolonged walking and standing activities." (Tr. at 188, 203.) Dr. Mosier-LaClair noted that Plaintiff was "grossly neurovascularly intact from L2 through S1 in both motor and sensory" and that Plaintiff "has a palpable dorsalis pedis and posterior tibial pulse." (*Id.*) Dr. Mosier-LaClair assessed "[o]steochondromatosis with involvement of bilateral upper and lower extremities with chronic pain[,]" "[b]ilateral congenital cavovarus feet with mild hindfoot and moderate midfoot osteoarthritis, right greater than left, minimally symptomatic[,]" "[b]ilateral osteochondromas distal

tib/fib with synostosis distal tib/fib joint with 30 degrees varus angulation left ankle joint without osteoarthritis ankle joints[,]" "[b]ilateral asymptomatic mild halux valgus right greater than left with metatarsus adductus[,]" and "[p]ossible congenital deformity right third metatarsal and adjacent proximal phalanx with varus angulation and shortening, asymptomatic." (Tr. at 189.) Dr. Mosier-LaClair indicated that a surgeon "could try to go in there and debulk these [osteochondromas] but his are so large it is never going to be normal or pain free." (*Id.*)

On September 29, 2010, an MRI of Plaintiff's left leg and ankle showed "multiple osteochondromas with hereditary multiple exostoses[,] . . . edema and fatty atrophy of the tibialis posterior muscle [which] are consistent with denervation[,] inferomedal sloping of the articular surfaces of the distal tibia and talus[,] an unstable fragment is suspected in a small osteochondral defect of the distal tibia[, and] mild degenerative changes of the left ankle." (Tr. at 160, 206.) An MRI of the right leg and ankle taken on September 30, 2010, showed "multiple osteochondromas [which] are consistent with hereditary multiple exostoses . . . [and] evidence of venous compromise of the leg due to compression of the popliteal vein by a large fibular osteochodroma[, and a] small amount of nonspecific edema in the soft tissues of the lateral aspect of the heel." (Tr. at 162, 191, 208.)

On November 18, 2010, Plaintiff was examined by Kimberly Les, M.D., who noted that Plaintiff's "multiple familial exostoses . . . have not changed in size, although, [they] are giving him pain with activity." (Tr. at 183.) Dr. Les also noted that although the osteochondromas were "tender to deep palpation and with range of motion[,] [d]istally, [Plaintiff] is neurovascularly intact." (Tr. at 184.) Dr. Les discussed the benefits and risks of "surgical resection of these painful masses" with Plaintiff. (*Id.*)

On December 8, 2010, Plaintiff was examined by A. George Dass, M.D., an orthopedic surgeon, who "recommended nonoperative management for the upper extremity osteochondromas" and, because Plaintiff was "having more problems in his legs at this time[,] [i]f the osteochondromas increase in size and become more painful, there may be risk of malignant transformation" such that Plaintiff should consult "with Dr. Les regarding possible excision[.]" (Tr. at 197.)

At the request of Disability Determination Services ("DDS"), Plaintiff was examined by Asit Kumar Ray, M.D., on April 9, 2011. (Tr. at 210-18.) Dr. Ray concluded that Plaintiff "has multiple osteochondromatosis at different parts of his body" and noted that Plaintiff was "ambulating with very slight limp without using any assistive devices. There are no neurologic deficits noted. His balance is intact. There is no coordination, spasticity or ataxia. No clonus. He is independent in his self-care and activities of daily living including his driving." (Tr. at 212.) Dr. Ray opined that Plaintiff "would be able to perform his usual and customary activities including his occupational duties without any restrictions." (Tr. at 213.)

Plaintiff was treated by Ethel Mbombow, P.A., from May 16, 2011, to July 15, 2011. (Tr. at 250-56.) On July 22, 2011, P.A. Mbombow completed a Medical Assessment of Ability to Do Work Related Activities (Physical). (Tr. at 246-49.) P.A. Mbombow indicated that she had seen Plaintiff on a monthly basis for "20+ minutes each." (Tr. at 247.) P.A. Mbombow opined that Plaintiff could only lift two to three pounds for one to three hours of an eight-hour workday, could stand or walk for less than two hours of an eight-hour workday, sit for a total of two to three hours of an eight-hour workday for one hour at a time, and should be able to elevate his legs intermittently for two to three hours, would need to take unscheduled break periods for at least three to four times for up to an hour at a time such that Plaintiff would need to rest for a minimum

9

of two hours in an eight-hour workday. (Tr. at 247-48.) P.A. Mbombow also estimated that Plaintiff's impairments would cause him to be absent from work more than four days per month. (Tr. at 248.) P.A. Mbombow found Plaintiff could frequently look down and hold head in static position, occasionally turn head, rarely look up, twist, and should never stoop, crouch or climb ladders. (Tr. at 249.) P.A. Mbombow also found Plaintiff's pain would interfere with the concentration and attention needed to perform even simple work tasks "constantly." (*Id.*)

In his Daily Activity Report, Plaintiff indicated that he can take care of his personal needs except that he cannot put socks on, that he prepares microwave meals, takes out the trash, rides in a car, shops in stores once a week, handles his own finances, watches television, and plays video games. (Tr. at 139-42.)

At the administrative hearing, Plaintiff testified that his pain medication "helps to where I can maybe get up, like now, you see. But that's about it." (Tr. at 28.) Plaintiff testified that he's "never pain free" but when asked what he spends his day doing, he responded, "playing around the house." (Tr. at 29.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider an individual with Plaintiff's background who

> is able to perform light work as defined by the regulations. He can frequently climb and can only occasionally kneel or crawl. He must avoid concentrated exposure to hazards.

(Tr. at 32.) The VE responded that such a person could perform the light, unskilled jobs of inspector (2,200), assembler (18,000) and hand packer (5,000). (Tr. at 32-33.)

F.     **Analysis and Conclusions**

1.     **Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 13-17.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "ALJ failed to give appropriate weight to the opinion of the physician assistant," citing SSR 06-3p (Doc. 9 at 8-11), failed to make a proper credibility determination (*id*. at 11-13), and failed to present an accurate hypothetical to the VE. (*Id*. at 13-14.)

### a.     Opinion of the Physician Assistant

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006). A physician assistant is not an acceptable medical source. *Id.*; *LaRiccia v. Comm'r of Soc. Sec.*, ___ F. App'x ___, No. 12-4198, 2013 WL 6570777, at *7 (6th Cir. Dec. 13, 2013). Therefore, a physician assistant's opinion is an "other source" opinion which is "not entitled to any special deference" but should be considered and evaluated. *Hill v. Comm'r of Soc. Sec.*, ___ F. App'x ___, No. 13-6101, 2014 WL 1257948, at *2 (6th Cir. Mar. 27, 2014); SSR 06-03p.

In the instant case, the ALJ summarized P.A. Mbombow's findings, found that they were "contrary to the substantial weight of the evidence, including Ms. Mbombow's own treatment notes[,]" and noted that "Ms. Mbombow apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. at 17.) These reasons are adequate to discount the opinion of an acceptable, treating medical source and, thus, are more than adequate to explain the ALJ's decision to give P.A. Mbombow's opinion "little weight." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011) (A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions.").

### b. Credibility Determination and RFC Analysis

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the

claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's

13

pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ considered each of the above factors. (Tr. at 14-16.) I suggest that the ALJ's findings as to credibility and RFC are supported by substantial evidence. Plaintiff certainly has osteochondromas that cause the affected areas on his body to be sensitive and cause, as he reported, "his feet and ankles [to] ache with prolonged walking and standing activities." (Tr.

14

at 188, 203.) However, there is no evidence that this condition is disabling. Dr. Mosier-LaClair noted that Plaintiff was "grossly neurovascularly intact from L2 through S1 in both motor and sensory" and that Plaintiff "has a palpable dorsalis pedis and posterior tibial pulse." (*Id.*) Dr. Dass noted that "[i]f the osteochondromas increase in size and become more painful" in Plaintiff's legs, he should consult "with Dr. Les regarding possible excision[.]" (Tr. at 197.) However, Dr. Les noted that the bumps or lumps "have not changed in size[.]" (Tr. at 183.) Dr. Les also noted that although the osteochondromas were "tender to deep palpation and with range of motion[,] [d]istally, he is neurovascularly intact." (Tr. at 184.) In addition, Dr. Ray, of DDS, noted that Plaintiff"is ambulating with very slight limp without using any assistive devices[,]" that there were no neurologic deficits, balance or coordination issues, and that Plaintiff is "independent in his self-care and activities of daily living including his driving." (Tr. at 212.) Dr. Ray opined that Plaintiff "would be able to perform his usual and customary activities including his occupational duties without any restrictions." (Tr. at 213.)

I further suggest that the ALJ's findings are supported by Plaintiff's own statements that he is able to take care of his personal care other than putting on his socks, that he prepares microwave meals, takes out the trash, rides in a car, shops in stores once a week, handles his own finances, watches television, and plays video games. (Tr. at 139-42.) Finally, I note that Plaintiff has been treated with prescription medication only; such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's conclusions.

I therefore suggest that the ALJ's findings that Plaintiff was not fully credible, that he could perform a limited range of light work, and that he is not disabled are all supported by substantial evidence and should not be disturbed.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder

CHARLES E. BINDER
Dated: April 9, 2014                                          United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  April 9, 2014                    By       s/Patricia T. Morris
                                                 Law Clerk to Magistrate Judge Binder